400            KENTUCKY REPORTS.            [Vol. 104.

South Covington & Cincinnati Street Ry. Co. v. Herrklotz, by, &c.

CASE 54—ACTION FOR PERSONAL INJURIES—OCTOBER 5.

# South Covington & Cincinnati Street Ry. Co. v Herrklotz, By., Etc.

### APPEAL FROM CAMPBELL CIRCUIT COURT.

1. PERSONAL INJURY—EXCESSIVE DAMAGES—LOSS OF ARM.—A verdict for $2,500 in damages for the loss of a fore-arm can not be held to be excessive.

2. SAME—PLEADING.—Where the petition alleges the injury, the amputation and the amount of damage, a denial by the answer that the injury was inflicted through the carelessness or negligence or by the fault of the appellant, will be construed as a denial merely of the carelessness, fault or negligence of the defendant, and not of the amputation.

3. SAME.—The defendant can not be heard to complain that there was no proof of the necessity of an amputation where its answer merely denied the responsibility of the defendant for damages complained of.

4. CONTRIBUTORY NEGLIGENCE BY INFANT OF TENDER YEARS.—In an action by an infant less than four years of age, the trial court held correctly as a matter of law that the plaintiff could not be guilty of contributory negligence.

5. SAME—CONTRIBUTORY NEGLIGENCE BY PARENTS OF INFANT.—In an action by the infant for damages done to himself by a defendant alleged to be guilty of negligence, contributory negligence on the part of the parents of such infant is no defense to the action.

6. SAME—INSTRUCTION.—In such an action the court correctly instructed the jury that if they believed from the evidence that plaintiff by his manner of starting to cross the street indicated an unconsciousness of the car or an intention to cross in front of it and that the motorman saw or by having his attention on the street in front of his car might have seen him so start or so crossing in time to have stopped the car with the appliances he had and avoid running over him, or if they believed that the motorman when he saw or was warned of plaintiff's peril not only stopped the car but reversed it and that it was

Vol. 104]   SEPTEMBER TERM, 1898.   401

South Covington & Cincinnati Street Ry. Co. v. Herrklotz, by, &c.

by reason of so reversing the car that plaintiff was run over and that an ordinarily prudent person would not with a knowledge of the circumstances then possessed by the motorman have reversed the car, they would find for the plaintiff; otherwise, they would find for the defendant.

L. J. CRAWFORD for APPELLANT.   (C. B. SIMRALL, JOHN GALVIN, BROMWELL & BRUCE of COUNSEL.)

1. While a child will not be held to the same degree of care as a matured person, it can be guilty of contributory negligence, and its negligence can bar a recovery.

2. While this court has recognized the doctrine of imputed negligence in only one case, to-wit: L. & P. Canal Co. v. Murphy, 9 Bush, 530, it has never in any case announced that it would not still recognize this doctrine.   P. & M. R. R. Co. v. Hoehl, 12 Bush, 41; Givens' Admr. v. K. C. R. R. Co. 12 Ky. Law Rep., 950; City of Covington v. Bramlege, by, etc., 14 Ky. Law Rep., 395; Paducah Str. Ry. Co. v. Atkins' Admr., 14 Ky. Law Rep., 425; L. & N. R. R. Co. v. Hunt, 11 Ky. Law Rep., 825; Schlenk's Admr. v. Central Passenger Ry. Co. 15 Ky. Law Rep., 409; Pittsburg, Cincinnati, Chicago & St. Louis Ry. Co. v. Geltmaker, 16 Ky. Law Rep., 861; East Tennessee Coal Co. v. Harshaw, 16 Ky. Law Rep., 526; Fitzgerald, by, etc. v. S. P. & M. Ry. Co., 8 Am. & Eng. Ry. Cases, 310 (Minn.); Crystal v. Troy & Boston R. R. Co., 105 N. Y., 164; s. c. 31 Am. & Eng. Ry Cases, 411, and note; Johnson v. Chicago & N. W. R. R. Co., 49 Wis., 529; s. c. 1 Am. & Eng. Ry. Cases, 157; Baker v. Eighth Ave. R. R. Co., 16 N. Y. Supp., 320; Bulger v. R. R. Co., 42 N. Y., 459; Hearne v. St. Charles St. R. R. Co., 34 La. Annual, 160; Boland v. Missouri R. R. Co., 36 Mo., 484; Sheets v. Connelly St. Ry. Co., 28 Atl. Rep., 483 (N. J.); Wolf v. Houston, West Side & Pavonia R. R. Co., 2 N. Y. Supp., 187; Flannigan v. Peoples' Pass. Ry., 163 Penn., 102; Kestner v. Pitts. & B. Trac. Co., 168 Penn., 422; Johnson v. Reading City Pass. Co., 160 Penn., 647; Kennedy v. St. L. R. R. Co., 43 Mo. App., 1; Citizens St. Ry Co. v. Carey, 56 Ind., 396; Citizens Pass. Ry. Co. v. Thomas, 132 Penn. St., 504; Cords v. Third Ave. Ry Co., 56 N. Y. Supp., 319; Fenton v. Second Ave. Ry. Co., 126 N. Y., 625; Chilton v. Traction Co., 152 Penn. St., 425.

[ 26 ]

South Covington & Cincinnati Street Ry. Co. v. Herrklotz, by, &c.

WRIGHT & ANDERSON FOR APPELLEE.

1. Scintilla of evidence, etc.; weight of evidence for jury. Paducah.
   St. Ry. Co. v. Atkins Admr., 14 Ky. Law Rep., 425.

2. Question as to capacity of infant, three years and ten months
   old to commit legal negligence, for the court, and not for the
   jury. Pratt Iron & Coal Co. v. Brawley, 83 Ala., 371; Gov. St.
   Ry. Co. v. Hanton, 53 Ala. 70; Westbrook v. Mobile & Ohio R. R.
   Co., 66 Miss., 560; s. c. 14 Am. St. Rep., 587; Stone v. Dry Dock,
   &c., R. R. Co., 115 N. Y., 104; Najel v. Allegheny, &c., R. R.
   Co., 88 Penn. St., 35; Johnson v. Reading City Pass. Ry., 160
   Penn. St., 647; Thompson on Negligence, p. 1181, sec. 31; Man-
   gam v. Brooklyn R. Co., 38 N. Y., 455; Hartfield v. Roper, 21
   Wendell, 615; Wright v. Malden R. R. Co., 4 Allen, 283; Kreig
   v. Wells, 1 Ed. Smith, 76; Callahan v. Mean, 9 Allen, 401;
   Toledo, &c, R. R. Co. v. Grable, 88 Ia., 441; Evansville, &c. R.
   R. Co. v. Wolf, 59 Ind., 88; O'Flagherty v. Union R. R. Co., 45
   Mo., 70; Mascheck v. St. Louis R. R. Co., 3 Mo. App., 600; Lafay-
   ette, &c. R. R. Co. v. Huffman, 28 Ind., 287; Jeffersonville, &c.
   R. R. Co. v. Bowen, 40 Ind., 545; McGarry v. Loomis, 63 N. Y.,
   104; Pittsburg, &c. R. R. Co. v. Caldwell, 74 Penn. St., 421;
   Lehman v. Brooklyn, 29 Barb., 234; North Pa. R. R. Co. v.
   Mahoney, 57 Penn. St., 187; McLeon v. Van Zant, 7 Jones &
   Sp., 347; Chicago v. Stair's Admr., 42 Ill., 174; Metty v. So. Pac.
   R. R. Co., 52 Cal., 602; Pittsburg, &c. v. Viney's Admr., 27 Ind.,
   513; Louisville & Portland Canal Co. v. Murphy, 9 Bush, 522;
   Paducah & Memphis R. R. Co. v. Hoehl, 12 Bush, 41.

3. Imputed negligence. Hartfield v. Roper, 21 Wend., 615; Robinson
   v. Com., 22 Vt., 213; Lynch v. Nurdin, Thomp. on Neg., 1140;
   Western Union Tel. Co. v. Hoffman, 26 Am. St. R., 759; Chicago
   City Ry. Co. v. Wilcox, 4 Am. R. R. & Corp. Cases, 672; Bishop
   on Non-Contracts, sec. 562; Wharton on Negligence, sec. 314,
   &c.; Beach on Con. Neg., secs. 38-48; Patterson's Ry. Acc. L.,
   secs. 90-94; Ray's Neg. of Imp. Duties, sec. 197; Norfolk &
   Western Ry. Co. v. Grosclose (Va.), 29 Am. St. R., 718; New-
   man v. Phillipsburg Horse Car Co., 19 Atl. Rep., 1102; 2 Am.
   Railroad & Corp. Rep., 736; Bottoms v. Seaboard & Roanoke
   R. R. Co., 114 N. C., 699; Wood on Railroads, sec. 322; Wherry
   v. Whitman, 1 Head., 610; Kay v. Penn. R. R. Co., 65 Penn.
   St., 269; Atlantic, &c. R. R. Co. v. Garritt, 93 Ga., 369.

South Covington & Cincinnati Street Ry. Co. v. Herrklotz, by, &c.

·C. B. SIMRALL FOR APPELLANT IN A PETITION FOR A REHEARING.

> If one, whose duty it is to protect another, sees such other
> in sudden danger, and, in the emergency of the moment, adopts
> one of two means provided to avoid such danger, error of judg-
> ment in the choice of the means used will not constitute negli-
> gence.  Wynn v. Central Park, &c. R. W. Co., 133 N. Y., 375;
> Bittner v. Cross Town Ry. Co., 153 N. Y., 76; Strebenau v. At-
> lantic Ry. Co., 155 N. Y., 511.

.JUDGE GUFFY DELIVERED THE OPINION OF THE COURT.

It is alleged in the petition in this action that the ap-
pellant, by its agents and servants, carelessly and negli-
gently, and without the exercise of ordinary care, ran one
of its said cars against plaintiff with great force and
violence, so that the wheels thereof passed upon and
·over his left arm, and thereby said arm was crushed, cut,
.and mangled, and almost entirely torn from his body, so
that it became and was necessary, in order to save his
life, to amputate said arm; and upon the. same day of the
injury his arm was amputated at a point about two
inches below the elbow.  It is further alleged that he ex-
pended $103.10 for medical and surgical services.  Plain-
tiff also alleged that by the loss of said arm he had been
permanently disabled for life, and thereby injured and
damaged in the sum of $10,000, and prayed judgment for
the sum of $10,103.10.  It is further alleged in the peti-
tion that the plaintiff is four years old.

The first paragraph of the answer is a denial of all
negligence upon the part of the appellant.  The second
paragraph pleads contributory negligence on the part of
plaintiff, and upon the part of his parents, and also con-
tains an averment tending to show that it used all means
reasonably within its power to prevent the accident, after
it saw the danger of appellee; to which second paragraph

a demurrer of the plaintiff was filed and sustained with leave to amend. Thereupon appellant filed an amended answer, which more specifically pleaded the negligence of the appellee, and that of his parents, to which a demurrer was also sustained. Thereupon appellant filed the second amended pleading, consisting of two paragraphs, the first of which pleaded negligence, setting up wherein it consisted, of the parents, and the second pleaded contributory negligence of the appellee; to which plaintiff's demurrer was sustained. A jury trial resulted in a verdict and judgment in favor of appellee for $2,500, and, appellant's motion for a new trial having been overruled, it prosecutes this appeal. The first grounds for a new trial contain fifteen separate reasons or grounds, and the additional grounds consist of eight separate reasons or grounds for a new trial, some of which, however, are the same in substance as those embraced in the first grounds.

We deem it unnecessary to recite in detail the several grounds relied on, many of which are not seriously contended for in appellant's brief. It is immaterial whether appellant's motion to strike out the $103.10 for medical services was properly overruled or not, as no proof was directed to that question, and the jury were not authorized by the instructions to find anything on that account, nor do we think that the court erred to the prejudice of appellant's substantial rights in the examination and formation of the jury. We think the evidence in the case entitled plaintiff to have the case submitted to a jury, and we can not say that the verdict is excessive, or flagrantly against the evidence. It is insisted, however, by appellant, that there was no evidence given by any witness showing that amputation of the arm was necessary, or in fact that it had been amputated, nor any evidence

showing affirmatively any damage that plaintiff had sustained. It, however, seems to us that the answer fails to deny either the amputation, or the damage, or the injury. The answer, when properly construed, is a denial that any injury was inflicted through the carelessness or negligence, or by the fault of appellant. That being true, and taken in connection with what evidence was presented, we think sufficient to authorize the jury to reach the conclusion that the injury complained of had been inflicted upon the plaintiff, and the facts and circumstances in the case were sufficient to authorize the jury to find that plaintiff had been damaged to the extent of $2,500.

It is also insisted for appellant that the proof showed that appellant was not at fault, and that it could not, with ordinary care, have avoided the injury. But it seems clear to us that some of the testimony conduces to show want of proper care, and it was the province of the jury to determine from all the facts the question of negligence.

Appellant also complains of error of the court in sustaining the demurrers to the several amended answers, and suggests that the negligence of the appellee should have been taken into consideration; or, in other words, that the court erred in sustaining the demurrer to the answer so far as it pleaded contributory negligence on the part of the infant. If there had been a sufficient denial of the age of the infant, followed by any sort of conflict of testimony as to his age, the contention of appellant as to this question would have to be sustained. But if we concede that the age of the plaintiff was denied by the answer, yet, if the uncontradicted testimony showed him to have been of such tender years that he could not be guilty of contributory negligence, it then follows that the error, if error it was, complained of, was in no sense prej-

udicial to the substantial rights of the appellant. It is the contention of appellee that a child of less than four years of age—and the uncontradicted proof shows plaintiff to have been less than four years old at the time of the injury—can not be guilty of negligence, and that as a matter of law the court should so hold. We have been referred to the case of Louisville and Portland Canal Co. v. Murphy's Adm'r., 9 Bush, 522, as bearing upon this question. In that case the injured party was a child of about five years of age. In discussing the question involved in the case, the court used this language on page 530: "The child, by reason of its tender years, can not be said to be guilty of any negligence. She was *non sui juris*, and her conduct, if negligent, must be regarded as the negligence of the parents, and not that of the infant." In Government Street Railroad Co. v. Hanlon, 53 Ala. 81, the Supreme Court of Alabama quotes with approval the following: "And while there is some conflict in the authorities, it seems to us that it should be regarded as settled by the weight of authority in this country that when a child of tender years to whom judgment and discretion can not be imputed, but who is presumed incapable of their exercise, is injured by the negligence of an adult, that contributory negligence shall not be considered as available in defense of his rights to redress. Wharton's Law of Negligence, sections 309, 310." In Pratt Coal and Iron Co. v. Brawley, 83 Ala. 374, [3 South. 556,] the court said: "A child between seven and fourteen years of age is *prima facie* incapable of exercising judgment and discretion, but evidence may be received to show capacity. If capacity be shown, the general rule of contributory neligence is applicable, whether the action is prosecuted on behalf and for the benefit of the child, or by the father for his own benefit.

* * * The proof shows that the child was a few months over seven years of age, but there was no evidence tending to show the requisite capacity. In such case the presumption of incapacity prevails." In Westbrook v. Mobile & Ohio Railroad Co., 66 Miss. 560 [6 South. 321], we quote from the syllabus: "An infant four or five years old, in an action brought on his own behalf, is not, as a matter of law, to be charged with contributory negli-- gence because of failure to exercise reasonable care to avoid injury. A child of such age is *prima facie* exempt from responsibility; but, if he is of exceptional maturity or capacity, this fact must be properly pleaded, in order to charge him with contributory negligence; and then testimony is admissible to show his ability for taking care of himself, and the question of capacity is one of fact for the jury, and not one of law for the court to decide." In the case of Stone, Adm'r. v. Dry Dock, etc., Co., 115 N. Y. 104 [21 N. E. 712], the court said in substance: In administering civil remedies the law does not fix any arbitrary period when an infant becomes *sui juris*. When the inquiry is material, it becomes a question of fact for the jury, unless the child is of so very tender years that the court can safely decide. In the case of Nagle v. Allegheny Valley Railroad Co., 88 Pa., St. 39, the court, in discussing the question under consideration, said: "At what age, then, shall an infant's responsibility be presumed to commence? This question can not be answered by referring it to the jury. That would furnish us with no rule whatever. It would give us a mere shifting standard, affected by the sympathies or prejudices of the jury in each particular case. One jury would fix the period of responsibility at fourteen, another at twenty or twenty-one. This is not a question of fact for the jury. It is a question of law for the -

court. Nor is its solution difficult." In view of the foregoing authorities, as well as upon sound reason and principle, we conclude that the court did not err in sustaining the demurrer to the plea of contributory negligence upon the part of plaintiff; and it also follows that the court did not err in refusing the various instructions offered by appellant, submitting to the jury the question of contributory negligence upon the part of plaintiff.

It is further insisted by appellant that the court erred in sustaining the demurrer to the plea of contributory negligence upon the part of the parents, and also in refusing the several instructions offered on that subject. It is said in the briefs in this case that the question as to whether the negligence of the parents can be imputed to the child in suits to recover on its own behalf for injuries has never been directly decided by this court, and we have not been referred to any decision of this court that does expressly decide the question in dispute. It may be conceded that quite a number of the courts of last resort have decided that in actions by infants to recover for injuries sustained by them the negligence of the parent can be imputed to the child, and its recovery thereby defeated. So far as we are advised, this doctrine was first announced by the Supreme Court of New York in Hartfield v. Roper, 21 Wend. 615. This court, however, was not the court of last resort in the State of New York; the court of last resort in New York being styled the Court of Appeals. But it is true that the Court of Appeals of New York has followed the doctrine announced in the case supra, and the same has been followed in Massachusetts and a number of other States; but it seems to us that it is not consistent with reason nor the principles of equity. To say that an infant incapable of controlling its own actions, or judg-

ing of what is proper, prudent, or right, should be deprived of the right to recover for injuries inflicted upon it through the negligence of others simply because its parent or custodian had failed to discharge the duty resting upon him seems to us absurd, and opposed to natural' justice. It will also be found that many of the courts of last resort have repeatedly repudiated the doctrine announced in Hartfield v. Roper. We quote as follows from Bish. Noncont. Law, section 581-583, inclusive:

"581. There is a doctrine prevailing in a part of our States—possibly also in England, but the question there is not free from doubt—to the effect that, where a young child is in the care of an older person, particularly the parent, the negligence of this person shall be imputed to him, as his contributory negligence, in his suit to recover compensation for an injury inflicted by a third person. The one in whose care he is, it was said in an early case on the subject, 'is keeper and agent for this purpose; and, in respect to third persons, his act must be deemed that of the infant, his neglect the infant's neglect,—reasoning which, we have just had occasion to see, is not sound in law. On the other hand—

"582. Looking into the reasoning of the law, we discover that it does not sustain this doctrine. The doctrine is a new one, brought forward long after the system of the common law, with its many principles, had become consolidated, And in this system, unlike some former systems wherein the child was treated substantially as the father's chattel, having few or no rights separately its own, the minor, from the first drawing of the infantile breath, is invested with all those rights of an adult which can give him anything, and protected simply by such disabilities as can protect, yet by none which are

capable of working him harm. Now, this new doctrine of imputed negligence, whereby the minor loses his suit, not only where he is negligent himself, but where his father, grandmother, or mother's maid is negligent, is as flatly in conflict with the established system of the common law as anything possible to be suggested. The law never took away a child's property because his father was poor, or shiftless, **or** a scoundrel, or because anybody who could be made to respond to a suit for damages was a negligent custodian of it. But by the new doctrine, after a child has suffered damages, which, confessedly, are as much his own as an estate conferred upon him by gift, and which he is entitled to obtain out of any one of several defendants who may have contributed to them, he can not have them if his father, grandmother, or mother's maid happens to be the one making a contribution. In these and other respects, it is submitted, the established principles stated in a preceding section are conclusive of the proposition that the doctrine now in contemplation does not belong to the common law. And—

"583. Though the erroneous doctrine is upheld by courts as respectable as any among us, the contrary and sounder view is sustained by the courts not less respectable, as well as by the law's established reasons. To enter upon a count of the States on the respective sides of this question would be to resort to the lowest kind of argumentation ever found in a law book; yet, even from this sort of reasoning, it is believed the doctrine which refuses to impute a parent's sin of negligence to the child would not suffer."

It is said in 2nd Volume of Thompson on Negligence, p. 1185, section 35: "The harshness of the rule is very much modified in its application in several States which profess

to follow it.   Thus, in Maryland it is held that a child *non sui juris* will not be prevented from recovering in consequence of the negligence of his parents if the jury find that the consequences of such negligence could have been avoided by the exercise of ordinary care or prudence on the part of the defendant."   A similar remark is also made in regard to California.  The Supreme Court of Alabama, in Government Street Railroad Co. v. Hanlon, 53 Ala. 82, in discussing this question, said: "The parent is entitled to the custody of the child, and the law demands from him care and maintenance, and protection commensurate with his ability and the child's wants.   But we know of no principle of law which will justify a denial of those legal rights because of the failure of the parents to extend to him the protection which the law demands.   When the parents fail in this duty there would seem to be greater reason for extending to the child a higher degree of civil protection.   It is certain that under the law of this State the parent can not, by any act or omission, impair any right of property which the child may have.   When the child sues to recover damage for a personal injury, the father can not dismiss, release, or compromise the suit.   *   *   *   It seems repulsive to our sense of justice that because the parent is negligent of his child, others may, with impunity, be equally negligent of its  helplessness,  and equally indifferent to its necessities.   The law may not compel active charity for relief of the child, but it does shield him from positive wrong by neglect.   Without inquiring, therefore, whether negligence can be imputed to the parents of the plaintiff because they permitted him to go into a crowded street of a populous city, unattended except by a brother incapable of protecting him, we do hold that, if it were negligence, it can not be charged

to the plaintiff, or affect his right of recovery in this case."
The same court, in the case of Pratt Coal and Iron Co. v.
Brawley, 83 Ala. 374 [3 South. 555], reaffirmed the doctrine
announced in the case supra. The court, in the latter case,
said: "If the plaintiff is of such tender years that he is con-
clusively presumed incapable of judgment and discretion,
and of owing a duty to another, neither contributory neg-
ligence on his part nor that of the parent can be set up
to defeat a recovery." The Supreme Court of Vermont,
in Robinson v. Cone, 22 Vt. 213, speaking through Judge
Redfield, said: "And we are satisfied that although a
child, or idiot, or lunatic may, to some extent, have es-
caped into the highway through the fault or negligence
of his keeper, and so be improperly there, yet, if he is hurt
by the negligence of the defendant, he is not precluded
from his redress. * * * We have not felt bound to go
into an extended review of the case of Hartfield v. Roper,
21 Wend. 615, for the facts in that case and the finding
of the jury in this case have so wide a difference in the
two cases that one is no guide to a determination of the
other. The case of Hartfield v. Roper is, so far as it has
any application to the present case, altogether at variance
with that of Lynch v. Nurdin, and far less sound in its prin-
ciples, and infinitely less satisfactory to the instinctive
sense of reason and justice." The Supreme Court of Texas,
in W. U. Telegraph Co. v. Hoffman, 80 Tex. 424 [15 S. W.
1048], expressly decided that the negligence of parents can
not be interposed as a defense brought for the benefit of a
minor child. The Supreme Court of Appeals of Virginia,
in the case of Norfolk & Western Railroad Co. v. Grose-
close's Adm'r. (opinion delivered July 16, 1891), 88 Va.
267 [13 S. E. 454], discussed at considerable length the
question under consideration. In that opinion the court

said: "When the suit is by a parent for the loss of service caused by an injury to the child, the contributory negligence of the plaintiff is a good defense; but such negligence is not imputable to the child, and is, consequently, not to be considered, when the suit is by the child, or his personal representative [quoting several authorities]. The doctrine of Hartfield v. Roper, 21 Wend. 615, has been repudiated in this State, as in many other States of the Union, and the doctrine established as just stated [quoting numerous authorities].  *  *  *  Of course, it is essential to the recovery in any case that negligence on the part of the defendant be shown.  But when that is proven in a suit by the child, the parent's negligence is no defense, because it is regarded not as a proximate, but as a remote cause of the injury.  And the reason lies in the irresponsibility of the child, who, itself, being incapable of negligence, can not authorize it in another.  It is not correct to say that the parent is an agent of the child, for the latter can not appoint an agent.  The law confides the care and custody of a child *non sui juris* to the parent; but, if this duty be not performed, the fault is the parent's not the child's.  There is no principle, then, in our opinion, upon which the fault of the parent can be imputed to the child. To do so is to deny to the child the protection of the law." The Supreme Court of Mississippi, in Westbrook by etc. v. Mobile & Ohio Railroad Co., 66 Miss. 560 [6 South. 321], in a well-considered opinion held that the negligence of the parent or custodian of a child can not defeat a recovery for injury sustained by the child.  The court said: "It is the duty of the parent to guard and protect his infant child from danger, and this duty is more imperative in proportion to the weakness and incapacity of the child. Failure of the parent to discharge such duty is negligence,

414          KENTUCKY REPORTS.          [Vol. 104.

South Covington & Cincinnati Street Ry. Co. v. Herrklotz, by &c.

and, if such negligence contributes directly or essentially to the child being injured, the parent is a concurrent wrongdoer with the party inflicting the injury, and his negligence, with the exceptions above stated, would be a bar to his own suit. But when the action is brought, as in this case, which was brought by the infant, and for his benefit, the better rule is that the negligence or misconduct of the parent or custodian of the child shall not be imputed to the child [quoting Beach, Contrib. Neg., section 43, and authorities there cited]. To charge the child with the negligence of the parent or custodian in such case would be, as said by the Supreme Court of New York in Lannen v. Gaslight Co., 46 Barb. 246, 'to visit the sins of the father on the child to an extent not contemplated by the decalogue, or in the more imperfect digest of human law.' Infants have legal rights distinct from the parents, which are carefully protected by law; and among these is the right to secure it from personal injuries caused by the negligence or wilful wrong of others. Indeed, it seems that the negligence or dereliction of the parents or custodian of the child, instead of being a justification to others to use or misuse the child, should have the contrary effect, both in law and in morals." The Supreme Court of North Carolina, in Bottoms v. Seaboard & R. Railroad Co., 114 N. C. 699 [19 S. E. 730], in a lengthy and well-considered opinion, reviews the authorities upon this question, and entirely repudiates the doctrine announced in Hartfield v. Roper. We quote as follows from the syllabus: "An infant 22 months old is incapable of contributory negligence so as to relieve a railroad from liability for the negligent act of its employes. The negligence of the parent or guardian in allowing a child of tender years to stray or wander on a railroad track can

not be imputed to such child, so as to relieve the railroad
company from responsibility for the negligence of its em-
ployes in an action brought by or on behalf of the child."
The Supreme Court of New Jersey, in Newman v. Phillips-
burg H. C. Railroad Co., 52 N. J. Law, 446 [19 Atl. 1102],
decided that an infant of tender years is not to be charged
with the negligence of the person having it in charge. Chief
Justice Beasley delivered the opinion of the court, and,
after referring to the case of Hartfield v. Roper, said: "In
fact, this doctrine of the imputability of the misfeasance
of the keeper of a child to the child itself is deemed to be
a pure interpolation into the law, for, until the case under
criticism, it was absolutely unknown; nor is it sustained
by legal analogies. Infants have always been the partic-
ular objects of the favor and protection of the law. In
the language of an ancient authority this doctrine is thus
expressed: 'The common principle is that an infant, in all
things which sound in his benefit, shall have favor and
preferment in law as well as another man, but shall not be
prejudiced by anything in his disadvantage.' 9 Vin. Abr.
374. And it would appear to be plain that nothing could
be more to the prejudice of an infant than to convert, by
construction of law, the connection between himself and
his custodian into an agency to which the harsh rule of
respondeat superior should be applicable. The answer-
ableness of the principal for the authorized acts of his
agent is not so much the dictate of natural
justice as of public policy, and has arisen, with
some propriety, from the circumstances that the creation
of the agency is a voluntary act, and that it can be con-
trolled and ended at the will of its creator. But in the
relationship between the infant and its keeper all these
decisive characteristics are wholly wanting. The law

imposes the keeper upon the child, who, of course, can neither control nor remove him; and the injustice, therefore, of making the latter responsible, in any measure whatever, for the torts of the former, would seem to be quite evident.  Such subjectivity would be hostile, in every respect, to the natural rights of the infant, and, consequently, can not, with any show of reason, be introduced into that provision which both necessity and law establish for his protection.  Nor can it be said that its existence is necessary to give just enforcement to the rights of others.   When it happens that both the infant and its custodian have been injured by the co-operative negligence of such custodian and a third party, it seems reasonable, at least in some degree, that the latter should be enabled to say to the custodian, 'You and I, by our common carelessness, have done this wrong, and therefore neither can look to the other for redress;' but when such wrongdoer says to the infant, 'Your guardian and I, by our joint misconduct, have brought this loss upon you, consequently you have no right of action against me, but you must look for indemnification to your guardian alone,' a proposition is stated that appears to be without any basis, either in good sense or law.   The conversion of the infant, who is entirely free from fault, into a wrongdoer, by imputation, is a logical contrivance, uncongenial with the spirit of jurisprudence.  The sensible and legal doctrine is this: An infant of tender years can not be charged with negligence; nor can he be so charged with the commission of such fault by substitution, for he is incapable of appointing an agent; the consequence being that he can, in no case, be considered to be the blamable cause, either in whole or in part, of his own injury.   There is no injustice nor hardship in requiring all wrongdoers

to be answerable to a person who is incapable either of self-protection or of being a participator in their misfeasance. Nor is it to be overlooked that the theory here repudiated, if it should be adopted, would go the length of making an infant in its nurse's arms answerable for all the negligences of such nurse while thus employed in its service. Every person so damaged by the careless custodian would be entitled to his action against the infant. If the neglects of the guardian are to be regarded as the neglects of the infant, as was asserted in the New York decision, it would, from logical necessity, follow that the infant must indemnify those who should be harmed by such neglects. That such a doctrine has never prevailed is conclusively shown by the fact that in the reports there is no indication that such a suit has ever been brought. It has already been observed that judicial opinion touching the subject just discussed is in a state of direct antagonism, and it would, therefore, serve no useful purpose to refer to any of them. It is sufficient to say that the leading text writers have concluded that the weight of such authority is adverse to the doctrine that an infant can become, in any wise, a tort feasor by imputation. 1 Shear. & R. Neg., section 75; Whart. Neg., section 311; 2 Wood, Ry. Law, p. 1284. In our opinion, the weight of reason is in the same scale. It remains to add that we do not think the damages so excessive as to place the verdict under judicial control." In Atlanta etc. Railway Co. v. Gravitt, 93 Ga. 369 [20 S. E. 550], the Supreme Court of Georgia considered and reviewed the authorities bearing upon the question, and decided that the negligence of the parent could not be imputed to the child. This case was decided at the October term, 1893, opinion being delivered

[27]

by Justice Lumpkin. The opinion is an instructive and exhaustive review of the entire question, covering more than forty pages in the report. The great length precludes an attempt to publish extracts sufficiently copious to do justice to the opinion.

We are clearly of the opinion that the negligence, if any, on the part of the parents of the plaintiff can not be imputed to the plaintiff when it is shown with the view of defeating or lessening the recovery. It therefore follows that all the instructions offered by the appellant submitting any such question to the jury were properly refused, and so many as were offered by appellant, correctly presenting the law of the case, were, in substance, embraced and covered by the instructions given by the court upon its own motion, which are as follows: "(1.) If the jury believe from the evidence that the plaintiff, Adam Herrklotz, by his manner of starting to cross the street indicated an unconsciousness of the car, or an intention to cross in front of it, and that the motorman saw, or by having his attention on the street in front of his car might have seen, Adam so start, or so crossing, in time to have stopped the car with the appliances on it, and avoided running over him; or so believe that the motorman, when he saw, or was warned of Adam's peril, not only stopped the car, but reversed it, and that it was by reason of so reversing the car that Adam was run over, and that an ordinarily prudent person would not, with the knowledge of the circumstances then possessed by the motorman, have reversed the car—they will find for the plaintiff; otherwise they will find for the defendant. (2.) The court instructs the jury that if they find for the plaintiff, the measure of damages is a sum of money equal to the difference between what plaintiff will earn

after he is twenty-one years old and what he would have earned after his arrival at said age had he not received the injuries described in the proof, not·exceeding, however, ten thousand dollars."

Perceiving no error to the prejudice of appellant's substantial rights, the judgment appealed from is, therefore affirmed.