## Bowling Green-Hopkinsville Bus Company v. Edwards.

## Southwestern Construction Company v. Same.

(Decided Feb. 28, 1933.)

(As Modified on Denial of Rehearing May 16, 1933.)

RODES & HARLIN, E. J. FELTS, W. V. PERRY, I. G. MASON and E. R. ATTKISSON for appellants.

COLEMAN TAYLOR and S. Y. TRIMBLE for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Reversing.

The appellee, Miss Mary Ermine Edwards, recovered a judgment for $8,000 against both the appellants, Bowling Green-Hopkinsville Bus Company and the Southwestern Construction Company, for the loss of the sight of an eye and the expenses incurred incident thereto, due, as she alleged, to the joint and concurrent negligence of the defendants. Their consolidated appeals will be disposed of in one opinion.

The plaintiff was a passenger on the bus of the Bowling Green-Hopkinsville Bus Company from Russellville to Hopkinsville. It was passing a truck of the Southwestern Construction Company, traveling in the opposite direction, when the injury was sustained. Broken stone of small dimensions was being spread on the road by the highway department, and at the point of the accident there was a sheet of this loose rock several inches in thickness. It is reasonably apparent that one of these small stones was cast by one or the other of the vehicles through the open window of the bus and struck the plaintiff in the eye, but by which car it was thrown can only be surmised. She was in the front seat, next to the open window, on the left side of

the bus, just back of the driver. The window in the door by which he sat was slanted toward the windshield and was also open. The accident occurred in August, 1930, when the weather was very warm. The plaintiff testified that the rock came through the window by the driver. The driver's evidence is that he knew nothing of the stone coming into the bus, but he heard Miss Edwards scream and say something had hit her. No rock was found inside of the bus. Quite naturally the exact relative positions of the two vehicles at the time was not shown, but it is shown that they were in the act of passing each other. Travel was restricted over the highway at this place in order to avoid interference with the workmen, but the bus was given special permission to use it, and the truck was engaged in hauling pipe for a gas line being built near and in the highway. It is thus shown that both vehicles were where they had the right to be. Several witnesses testified that it is a usual or common occurrence for automobiles traveling through such loose rock to throw them out from under the wheels with considerable force. Sometimes they are thrown to the side, sometimes to the front, and sometimes to the back. No one testified that it was a common thing for the gravel or stones to be thrown upwards from beneath the fenders into the machine which was passing over them.

There are a number of reasons advanced by the appellants for a reversal of the judgment, but it does not seem necessary to decide but one.

Appellants suggest some doubt about the accident having been caused by a flying rock. Aside from the positive statement of the plaintiff, we think the reasonable inference gathered from all the evidence is that such was the cause. But it seems to have been impossible to show whether that rock was thrown by the wheels of the bus or the wheels of the truck. Whether impossible or not, as a matter of fact it was not shown. The question is presented whether the casting of the rock was through actionable negligence; and that would seem to rest upon whether the throwing of the stone and an injury should have been reasonably anticipated or foreseen as a natural and probable consequence. Gosney v. L. & N. Railroad Company, 169 Ky. 323, 183 S. W. 538, L. R. A. 1916E, 458; Riley v. L. & N. Railroad Company, 231 Ky. 564, 21 S. W. (2d) 900. The

only theory of concurrent negligence is that, assuming the rock was thrown by the truck, the bus company owed a duty to its passenger to protect her from such danger. If it came from the bus wheels, then the passing of the truck at the moment was but a coincidence, and it was free from fault, and the carrier alone was responsible. If it came from the truck, and the bus company was not remiss in its duty to the passenger, then the truck company alone was liable.

It is said in Kennedy v. Maryland Casualty Company (D. C.) 26 F. (2d) 501, 502, which involved the right of indemnity under an accident insurance policy for the loss of an eye sustained by being struck by gravel thrown by a passing automobile, that it is well known by any one who has traveled over gravel roads "that a machine moving at a rapid rate has a tendency by the weight and pressure of the oval shaped tires, to throw gravel to either side of the road, as well as ahead and behind." Maness v. Life & Casualty Insurance Company, 161 Tenn. 41, 28 S. W. (2d) 339, is another case where a pedestrian suffered the loss of an eye by being struck by a flying pebble or other missile cast by the wheels of a rapidly passing automobile.

There are two cases relating to the liability of a passing automobile in this way.

In Burkes v. Lieberman, 218 App. Div. 600, 218 N. Y. S. 593, affirmed, 245 N. Y. 579, 157 N. E. 865, an automobile ran onto a small pile of loose rock, and cast one weighing fourteen pounds to the side of the road. It struck and broke the leg of a pedestrian who at the moment happened to be at the point. The New York courts of last resort concluded that, in the absence of evidence that the driver could see the stones or had reason to know that they would be in the road, and because he could not reasonably have anticipated that such a phenomenon would happen, and considering the indefinite testimony as to the speed of the car being excessive under the circumstances, the evidence was not sufficient to support the verdict for the plaintiff, and the judgment was reversed. A vigorous dissenting opinion took the position that the defendant was liable because the very occurrence itself clearly proved that the automobile was being driven at an excessive speed.

In the case of Teche Lines v. Bateman, 162 Miss. 404, 139 So. 159, 161, plaintiff and her husband were

riding in their private automobile, and, as they passed a bus of the defendant, a piece of rock or gravel was hurled against the windshield, penetrating the same, striking the plaintiff, and practically destroyed her eye. Her evidence was that the bus was running at 50 or 55 miles per hour, and was throwing rocks with considerable force and volume; that the car in which she was riding slowed down and pulled to the right of the road as far as possible. The defendant's evidence was that the bus was running at a reasonable speed. The Mississippi Supreme Court regarded it as common knowledge that automobiles proceeding at a high rate of speed on gravel roads throw the gravel or small rocks, which are calculated to inflict injury. We quote from the opinion:

> "It is well known that cars proceeding at a high rate of speed on gravel roads throw gravel by reason of the force of the car striking the gravel, or by reason of the suction of the car; and it is well known that such flying gravel or small rocks are calculated to inflict injury. The greater the rate of the speed the more violent the hurling of such gravel or rocks becomes. It may be safely assumed that a person traveling the highway assumes the risk incident to travel in a reasonable and lawful manner, but when a person exceeds the speed limit allowed by law and as a result of such excessive speed injury is inflicted upon another using the highway, such party is liable for the injury occasioned thereby. Every person driving a motor vehicle upon public highways is under duty to every other person traveling such highway to exercise reasonable care and caution to prevent injury and to operate the motor vehicles in accordance with statutes prescribing the rights and duties of persons upon such highways."

A judgment for $12,000 for the plaintiff was affirmed, conditioned upon a remittitur of $5,000 because of excessiveness.

In the light of these authorities, we may proceed upon the view that to knowingly run through loose rock at a rapid speed under circumstances such as here disclosed constitutes negligence. We turn to the question whether the carrier was negligent in not having protected the passenger from the peril of flying stones.

To determine this, we need only to refer to the recent case of Stephenson v. Smith Motor Coach Company, 243 Ky. 153, 47 S. W. (2d) 932, 933. Stephenson was a passenger on a public bus, and, while it was traveling over loose gravel, a moving van with a trailer approached. Each car was on the right side of the road. As they passed, a piece of gravel was thrown by the truck and struck the windshield of the bus, shattering it, and Stephenson's eyes were injured by the glass. The suit was against the carrier only. It was based upon the ground of general negligence in operating and managing the bus. It was held that the peremptory instruction to find for the defendant was proper because the company was not responsible for the presence of the gravel on the road; there was no evidence of any fact showing that the speed of the bus had anything to do with the accident; and that the defendant met the burden if the view that the res ipsa loquitur doctrine should apply. In concluding the opinion, it is said:

> "Thus we have a case where the break was caused by a stone, which, whether thrown from the wheels of the trailer or not, came from the outside through no fault whatever on the part of the coach Company. It not being claimed that the glass was defective or was insecurely fastened, and there being nothing in the evidence connecting the accident with the movement of the bus, it follows that the court did not err in sustaining appellee's motion for a peremptory instruction."

See, also, Shearman & Redfield on Negligence, sec. 516.

That opinion settled the point in this case in favor of the bus company as to its liability for the rock if it was thrown by the passing truck for it was not dangerous to have had the windows of the bus open under the prevailing weather conditions, unless peril or injury therefrom might have been reasonably anticipated under the circumstances.

Reverting to the issue of negligence as it pertains to the throwing of the rock: The matter of speed is the controlling factor here; and it seems to the court that the evidence of unreasonable speed on the part of the vehicles was not sufficient to take the case to the jury. Miss Edwards testified that the bus was going

"extremely fast," from 45 to 50 miles an hour, and the truck at "some similar speed," as they approached one another. Just before this she was talking with her companion on the same seat of the bus and at the same time was trying to attract the attention of a friend on the other side of the road. For a moment or two she was looking back. She testified:

"I turned and facing the front and as I did that I noticed the truck right on the bus and just as I saw the truck there was a white missile came; a rock came in the window and struck me in the eye."

She also stated when she noticed it the cars were "very close together, not more than ten or fifteen feet," and "they might possibly not have been that far; it was very hard to estimate distances right there." Again the plaintiff testified, when asked with reference to the relative positions of the vehicles:

"That is very hard to say because I was not interested in the truck until after I was hit. I merely noticed it as being a passing vehicle, but they were passing each other at the time when I first saw the rock."

Pursuing the subject further, we quote questions and answers:

"Q. Miss Mary Ermine, how far ahead of where the truck passed you was it that you saw the truck approaching? A. I did not see it until it was right on us. As I turned around I just got a glimpse of it enough to say that it was a truck.

"Q. And your idea as to the speed at which it was traveling was passed on the moment of it passing the bus? A. Yes."

Some of her other testimony emphasized this lack of attention to the approaching truck. Miss Edwards' companion testified that she paid no attention to the speed of the bus or movement of the truck.

While we may disregard for the purpose of the opinion the evidence of the defense upon this point, it may be said that the driver of the truck testified that it was going about 15 miles an hour and could not possibly have gone faster than 35 miles because of a governor which controlled the speed. It was heavily loaded with iron pipe. The driver of the bus testified that it

was traveling between 20 and 25 miles an hour in second gear and the truck was not running very fast because it had slowed down for a bad place which it had gone through.

It is uniformly regarded that the rate of speed at which an automobile is running is not a matter exclusively for expert testimony, and that a person of ordinary intelligence, having some knowledge as to the speed of automobiles generally, and actually witnessing the running of the machine, or deriving knowledge from the exercise of his own senses as to the speed, at or near the time of the injury caused by its operation, may testify to such speed as to a fact; the testimony being received and appraised according to the means of the observer and the standards he has used, the basis being tested by cross-examination. Wilder v. Cadle, 227 Ky. 486, 13 S. W. (2d) 497; Jones' Commentaries on Evidence (2d Ed.) secs. 1262, 1264; Blashfield's Cyclopedia of Automobile Law, p. 1693; Lewis v. Miller, 119 Neb. 765, 230 N. W. 769, 70 A. L. R. 532. But the opinion of a witness as to the speed of the vehicle may be rejected because of insufficient opportunity for observation under circumstances like those presented in the case at bar. Some courts have rejected the evidence upon the ground of incompetency of the witness because he could have had no intelligent idea as to the speed. Koch v. Lynch, 247 Mass. 459, 141 N. E. 677; Hinderer v. Ann Arbor Ry. Co., 237 Mich. 232, 211 N. W. 734; Beecroft v. Great Northern Ry. Co., 134 Minn. 86, 158 N. W. 800, affirmed 242 U. S. 618, 37 S. Ct. 213, 61 L. Ed. 530; Wright v. Crane, 142 Mich. 508, 106 N. W. 71. Other courts have held that the matter of opportunity to judge the speed under the particular circumstances went to the weight of the testimony rather than to its admissibility, but nevertheless rejected it as of no evidential value. Himmelwright v. Baker, 82 Kan. 569, 109 P. 178; Flach v. Ball, 209 Mo. App. 389, 240 S. W. 465; Dilger v. Whittier, 33 Cal. App. 15, 164 P. 49; Ottofy v. Mississippi Valley Trust Company, 197 Mo. App. 473, 196 S. W. 428.

There was no evidence other than the plaintiff's supporting her claim of rapidity of operation of the two machines. The full recitation of her evidence we believe demonstrates that her testimony as to the speed of the cars was but a hazardous guess, for under the

circumstances she could not have possibly known anything about it. The evidence was insufficient to take the case to the jury upon that point, which was essential to the maintenance of the cause of action. We are of the opinion, therefore, that the court should have directed a verdict for the defendants.

No other questions are considered or passed upon. Whole court sitting, except Perry, J.