Arthur JEWELL, et al., Appellants,

v.

Viola B. DELL, et al., Appellees.

Arthur JEWELL, et al., Appellants,

v.

J. Walter GOOTEE, et al., Appellees.

Court of Appeals of Kentucky.

Nov. 11, 1955.

Edw. J. Hogan, Joe H. Taylor, Louisville, for appellants.

Wm. A. Miller, Stites, Wood, Helm & Taylor, Louisville, for appellees.

STANLEY, Commissioner.

A heavily loaded truck owned by Arthur Jewell and driven by his employee, Frederick R. Hubbard, ran off the highway near Middletown, struck a building owned by Mrs. Viola B. Dell and Mrs. Ivor W. Howard, substantially demolished it, injured J. Walter Gootee and damaged the equipment of his barbershop conducted in the building. Suits for damages filed by the owners of the building and Gootee against Jewell and Hubbard are based on both trespass and negligence. The defendants denied negligence and pleaded that the facts and circumstances which caused the truck to run off the road were beyond the control of the driver and that he had acted reasonably in an emergency which he did not create.

By a third-party complaint the defendants charged Edwin A. Stich, proprietor of Stich's Garage, with having negligently repaired and adjusted the brakes of the truck by reason of which the brakes had failed to function when the driver undertook to stop the truck. The defendants demanded judgment against Stich for all sums that might be adjudged against them in favor of the respective plaintiffs. Stich denied the allegations of his negligence and pleaded the accident was caused by the sole negligence of the truck driver.

By amended complaints the plaintiffs asserted claims directly against the third-party defendant, Stich, based upon his concurring negligence in repairing the brakes. Stich denied liability but cross-claimed against the original defendants, Jewell and Hubbard, for indemnity should a judgment be rendered against him in favor of the plaintiffs.

The foregoing is the material substance of numerous pleadings and amendments. After several motions to dismiss were overruled, issues were joined and trial of the consolidated cases was entered into.

The court gave a peremptory instruction in favor of Stich, the garageman. He directed the jury to find for the plaintiffs against the truck owner and driver, and submitted only the issues as to the amount of damages sustained. The verdicts awarded $2,000 to the owners of the building for its destruction and $3,500 to Gootee for his damages.

Jewell and Hubbard appeal from the judgment in favor of Gootee and have filed a motion for an appeal under KRS 21.080 from the judgment in favor of the property owners. They also appeal from the judgment releasing Stich from responsibility.

The truck had two front wheels and a tandem or extra axle with dual wheels (eight altogether) on the rear and operated with a hydraulic brake system. On the oc-

casion of the accident, the truck, loaded with eleven tons of shelled corn, was en route from Columbus, Indiana, to Knoxville, Tennessee. Hubbard, the driver, called by the plaintiff to testify as on cross-examination, testified that when he started on the trip the brakes were in good condition but when he had passed through Louisville he noticed the brakes were failing, the pressure on the pedal not being normal. He stopped at a traffic light and then drove into Stich's Garage nearby and was able to stop there without trouble. After examining the truck's braking system, Stich advised him that the "cams" on one wheel did not catch and he, Hubbard, responded that he knew that. The "cam" is described as a screw or apparatus which moves the brake shoes in and out so as to tighten or loosen their application to the wheels.

Stich testified there were two shoes on each wheel; the "cam" on one of them did not work at all, and two others could not lock the wheels. The brake linings were worn on three of the twelve shoes. All of this prevented the application of normal braking power. After working on the truck, Stich told Hubbard that he could not get the cams to work so as to give him a complete brake and that if he wanted any more pedal, he must have a major job done. Hubbard had replied that the wheels had been taken off two or three days before for the purpose of having them fixed. Stich had not found it necessary to "bleed" the hydraulic fluid line (which, as we understand, is to take out any air that might have accumulated in the brake line) but he put in a half pint of the fluid. He had tried the pedal and it was "hard." Hubbard tested the brakes by moving the truck backward and forward a few feet, and believed them to be all right, although the pedal did not go up as high as when he had started on the trip. He told Stich, "I will make it O.K.", and drove away. Asked about these statements of Stich, Hubbard merely testified he could not say whether he had made them or not. They must be regarded as undenied.

The driver testified he had no occasion to apply or again test the brakes until he approached a stop light at the Evergreen Road intersection at Middletown, which is about four miles east of Stich's Garage. Several automobiles had stopped ahead of him. When he pressed on the pedal, he found he had no brakes at all; and in order to avoid striking the automobiles, he steered the truck to the right off the road and ran into the barbershop building. The highway has four lanes of travel and a gravel shoulder 8 or 10 feet wide. Several driveways and open spaces were available for him to have steered his runaway truck into. He did not attempt to use the hand brake.

The appellees maintain that irrespective of negligence there was absolute liability on the part of the defendants under the pleaded actions of trespass, relying upon Louisville Railway Co. v. Sweeney, 157 Ky. 620, 163 S.W. 739; Kentucky Traction & Terminal Co. v. Bain, 161 Ky. 44, 170 S. W. 499; Kentucky Traction & Terminal Co. v. Bain, 174 Ky. 679, 192 S.W. 656, L.R.A.1917D, 813. These were actions for damages caused by streetcars leaving the tracks and running upon abutting property. Other cases holding substantially that there was absolute liability for damages sustained through trespass are Consolidated Fuel Co. v. Stevens, 223 Ky. 192, 3 S.W.2d 203, where slate from a runaway car was thrown into a house, and Happy Coal Co. v. Smith, 229 Ky. 716, 17 S.W.2d 1008, where a spool of wire slid from a vehicle and rolled down a hill through plaintiff's house.

We need not go into the intricacies of the rigorous common law action of trespass for damages caused by the entry or invasion of another's property, in which action about the only defenses were or are that the entry was from causes beyond the trespasser's control. The trend of modern authority is that an unintended entry or intrusion upon the property in possession of another does not constitute actionable trespass. Prosser on Torts, Sec. 13, p. 76. Edgarton v. H. P. Welch Co., 321 Mass. 603, 74 N.E.2d 674, 680, 174 A.L.R. 462. As stated in this Massachusetts case, quoting from United Electric Light Co. v. Deliso Construction

Co., 315 Mass. 313, 52 N.E.2d 553, " 'A trespass requires an affirmative voluntary act upon the part of a wrongdoer and in that respect differs from negligence.' " This is the view adopted in the Restatement of Law of Torts, Sec. 166, which states the law to be that except where the actor is engaged in an extra-hazardous activity (such as blasting), he is not subject to liability for an entry that was non-negligent or was unintentional. In the light of this modern development of the law of trespass we may leave open the subject of its application to a case of the character of the one at bar. We decide it on the issue of negligence.

We consider the question of whether the trial court properly instructed the jury to find a verdict for the plaintiffs upon the theory that the truck driver was negligent as a matter of law.

KRS 189.090 positively declares that no owner of a motor vehicle shall knowingly operate or permit it to be operated with defective brakes on a highway. It further provides that every such vehicle shall be equipped with brakes adequate to control its movement and to stop and hold it, and that the machine shall be equipped with at least two separate braking mechanisms. Furthermore, that the service brakes shall be adequate to stop the vehicle when traveling 20 mph within a distance of 30 feet when upon a dry road surface where the grade does not exceed one percent, and that the hand brake shall be adequate to stop the car within a distance of 55 feet. Subsection (e) demands that "All brakes shall be maintained in good working order".

We have in this case uncontradicted evidence that the truck driver started out from Stich's Garage knowing that the brakes were not in good order, particularly that on three of the rear wheels no adjustment of the brakes could be or was made so they would lock the wheels. The superficial test, Hubbard testified, showed he then had only "one-third or one-half a pedal." He was unequivocal in testifying that his truck could not be stopped within 35 feet even at a speed of 20 mph or within 350 or 450 feet,

which seems to be the distance the truck ran after the driver first discovered he had no foot brake before striking the building. Here, then, is undenied evidence that the owner's agent, in clear violation of the statute, knowingly operated a ten-wheel motor vehicle carrying a load of 22,000 pounds on a much traveled highway. The warning and knowledge which he had received certainly suggested special caution and vigilance; nevertheless, he drove four miles upon the mere assumption that the brakes were adequate and without making any test at all. Under such circumstances, the owner of a motor truck cannot be exonerated of liability for resulting damages because his driver relied on a presumption that the operation was safe or the brakes were in good working order. Sotheron v. West, 180 Md. 539, 26 A.2d 16. It was his duty to know.

Had the consolidated cases been submitted, it would have been under an instruction to find for the plaintiffs if the jury believed from the evidence that the driver knowingly operated the vehicle with brakes that were defective or out of order and that doing so was the proximate cause of the damages. Whitney v. Penick, 281 Ky. 474, 136 S.W.2d 570. Now, violation of the terms of a statute regulating traffic is negligence per se or as a matter of law and imposes liability if it causes an accident or constitutes a breach of duty to a person injured thereby. Pryor's Adm'r v. Otter, 268 Ky. 602, 105 S.W.2d 564; Howard v. Fowler, 306 Ky. 567, 207 S.W.2d 559. A pertinent, well recognized trial rule is that where the uncontradicted evidence is such that only one conclusion can be drawn therefrom by fair-minded men and that conclusion is that negligence of a party to an accident was the proximate cause, there is no issue of fact to be submitted to the jury and the court has the duty of determining the case as a matter of law. Berry v. Jorris, 303 Ky. 799, 199 S.W.2d 616; Head v. Lucas, 313 Ky. 356, 231 S.W.2d 81. Clearly, it was proper for the trial court to apply the rule in these cases against the truck owner and driver unless, as the appellants contend, the cases should have been submitted under an emergency instruction, that

is, being confronted with the peril of striking the automobiles which had stopped ahead of him at the red light, the truck driver was excusable if in order to avert colliding with them he did what a reasonably prudent man would have done in the sudden emergency, although it may not have been the wisest thing to do.

■ Concerning the contention of a right to go to the jury under such an emergency instruction, the conclusion naturally follows from the above recitation of the events and conditions that the driver was responsible for creating the emergency of a sudden failure of the brakes. That being so, the defendants were not entitled to go to the jury on the issue of whether the driver acted prudently or reasonably in the emergency. Rabold v. Gonyer, 285 Ky. 618, 148 S.W.2d 728; Robinson v. Higgins, 295 Ky. 446, 174 S.W.2d 687.

We come to the question of liability of the third party defendant, Stich, who was let out of the cases by a peremptory instruction. As stated, the plaintiffs pleaded concurrent negligence on his part in repairing the brakes of the truck, and the defendants pleaded his sole responsibility and have sought indemnity against any judgment that might be rendered against them.

■ A garageman is liable for injury or loss which is the proximate result of his negligence in making repairs on a motor vehicle, which, of course, may relate to the braking system. And contributory negligence is, of course, a factor in an action based upon allegations of a garageman's negligence. Smith v. Roberts, Ky., 268 S.W.2d 635.

Appellants rely in part upon Oliver v. Bereano, 293 N.Y. 931, 60 N.E.2d 134, affirming 267 App.Div. 747, 48 N.Y.S.2d 142, which had affirmed a judgment for plaintiff in an action for damages caused by negligently repairing an automobile. Within a few hours after it had been repaired, the foot brakes failed as the car was descending a sharply graded street, and it ran upon a sidewalk and injured the plaintiff. There was evidence that when the brakes failed, the driver had attempted to shift gears into a lower speed, but the gear "stuck" and could not be shifted. There was some doubt whether the garageman had contracted to repair the brakes but no doubt of his having worked on the gears. The circumstances and occurrences so soon after making the repairs made it a question for the jury whether the driver's inability to shift gears was due to improper or negligent repair. There is a material difference in that case and the one at bar. The issue of liability is not to a person injured by reason of defective repairs but to the owner and driver of the motor vehicle who is liable to the injured persons.

■ Actionable negligence of a repairman or serviceman from failure of the mechanism of a motor car upon which he has worked rests in part, at least, upon his assurance—more often implied than expressed—that the machine was safe for operation when in fact it was not. In this case, the truck driver received no such assurance but on the contrary was fully apprised of the fact that the brakes had been only adjusted or partially repaired, and he accepted the truck in that condition. While it may be true, as Hubbard testified, Stich did not tell him specifically the brakes were not good, Hubbard admits enough for the court to have held that he knew that a complete and perfect repair job had not been undertaken and that further work on the brake mechanism was at least desirable if not necessary. He had warning of the imperfect condition of the brakes when he drove away with the statement, "I will make it O.K." He did not rely on any expressed or implied assurance of safety but assumed the risk of accident.

We are of the opinion, therefore, that the trial court properly directed a verdict for Stich.

The judgments are affirmed.